FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAN 13 2026

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

Todd Blanche
Deputy Attorney General of the United States
Letitia A. Sikes
Assistant United States Attorney
Eastern District of Washington
402 E. Yakima Ave., Suite 210
Yakima, Washington 98901

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:25-CR-2045-SAB |
| Plaintiff, | Plea Agreement |
| v. | Fed. R. Crim. P. 11(c)(1)(C) |
| ZACHARY TYLER VANTUYL, | |
| Defendant. | |

Plaintiff United States of America, by and through Letitia A. Sikes, Assistant United States Attorney for the Eastern District of Washington, and Defendant Zachary Tyler Vantuyl ("Defendant"), both individually and by and through Defendant's counsel, Craig Webster, Assistant Federal Defender, agree to the following Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C). Defendant also enters a Plea Agreement in Case No. 1:24-CR-2075-SAB simultaneous to the entry of the Plea Agreement. Upon the entry of a successful guilty plea to Counts 1, 2, 3, 6 and 7, in Case No. 1:25-CR-2045-SAB, the United States would move to dismiss Counts 4 and 5 at sentencing.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to the Indictment filed on April 9, 2025, charging Defendant with: Count 1– Timber Afire, in violation of 18 U.S.C. § 1865; Counts 2–7 Arson of Federal Property, in violation of 18 U.S.C. § 844(f). ECF

PLEA AGREEMENT - 1

No. 1, The Indictment also includes forfeiture allegations pursuant to 18 U.S.C. § § 982, 844 and 28 U.S.C. § 2641(c).

Regarding Count 1– Timber Afire, Defendant understands that the following potential penalties apply:

    i.     A term of imprisonment of no more than 5 years;

    ii.    A term of supervised release of not more than three (3) years;

    iii.   a fine of up to $250,000.00; and

    iv.   a $100 special penalty assessment.

On April 9, 2025, the United States filed a penalty slip for the seven counts in the Indictment. ECF No. 3. In the charges & penalties, the Government correctly listed the penalties as applied to Count 1– Timber Afire and as stated above. However, further review of the evidence in this case and additional legal research, has revealed that there are different charges and penalties for some of Counts 2-7, Arson of Federal Property, in violation of 18 U.S.C. § 844(f). There are three possible ranges of punishment pursuant to 18 U.S.C. § 844(f)(1), (f)(2) and (f)(3). (Section (f)(3) provides that when the conduct prohibited by 844(f) causes of the death of any person, that individual shall be subject to the death penalty, or imprisoned for not less than 20 years or life, fined under this title or both. It is undisputed that no death occurred during Defendant's multiple violations of Section 844(f), so (f)(3) does not apply). An amended charges and penalties slip shall be filed prior to the filing of this Plea Agreement, regarding applicable sections (f)(1) and (f)(2) set forth here in Section 1 of this Plea Agreement as well as in the Factual Basis below.

Pursuant to 844(f), when an individual maliciously damages or destroys or attempts to damage or destroy, by means of fire or explosive any real or personal property owned, possessed by and leased to the United States, etc., the Defendant "shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both." This is the statutory language utilized in the indictment, but the

PLEA AGREEMENT - 2

*mens rea* and *corpus delicti* remain unchanged for the additional code sections, rather they are sentence enhancements for causal events that occur from any violation of 844(f). Section (f)(2) provides that whoever engages in conduct prohibited by this subsection, "and as a result of such conduct, directly or proximately causes personal injury or creates a substantial risk of injury to any person, including any public safety officer, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both." Based on the substantial risk of injury to any person caused by some of Counts 2-7, A person acts knowingly in creating a substantial risk of death or serious bodily injury when (1) it is practically certain that his actions would cause a substantial risk of death or serious injury; and (2) he was aware of that fact. *United States v. Beardslee, 197 F.3d 378, 389 (9th Cir. 1999).*

Regarding Count 2– Arson of Federal Property ("South Slope Fire"), Defendant understands that the following potential penalties apply:

    i.    A term of imprisonment of no less than 7 years and up to 40 years.

    ii.    A term of supervised release of not more than five (5) years;

    iii.    a fine of up to $250,000.00; and

    iv.    a $100 special penalty assessment.

Regarding Count 3– Arson of Federal Property ("the Roza Slope Fire"), Defendant understands that the following potential penalties apply:

    i.    A term of imprisonment of no less than 7 years and up to 40 years;

    ii.    A term of supervised release of not more than five (5) years;

    iii.    a fine of up to $250,000.00; and

    iv.    a $100 special penalty assessment.

Regarding Count 4– Arson of Federal Property ("the Roza Fire"), Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 3

    i.    A term of imprisonment of not less than 7 years and up to 40 years;

    ii.    A term of supervised release of not more than five (5) years;

    iii.    a fine of up to $250,000.00; and

    iv.    a $100 special penalty assessment.

Regarding Count 5– Arson of Federal Property ("the Yakima River Fire"), Defendant understands that the following potential penalties apply:

    i.    A term of imprisonment of not less than 5-20 years;

    ii.    A term of supervised release of not more than three (3) years;

    iii.    a fine of up to $250,000.00; and

    iv.    a $100 special penalty assessment.

Regarding Count 6– Arson of Federal Property ("the Burbank Creek Fire"), Defendant understands that the following potential penalties apply:

    i.    A term of imprisonment of not less than 7 years and up to 40 years;

    ii.    A term of supervised release of not more than five (5) years;

    iii.    a fine of up to $250,000.00; and

    iv.    a $100 special penalty assessment.

Regarding Count 7– Arson of Federal Property ("the Selah Butte Fire"), Defendant understands that the following potential penalties apply:

    i.    A term of imprisonment of not less than 7 years and up to 40 years;

    ii.    A term of supervised release of not more than five (5) years;

    iii.    a fine of up to $250,000.00; and

    iv.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of

PLEA AGREEMENT - 4

supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

      a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

      b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony,

      c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony,

      d.    1 year in prison if the offense that resulted in the term of Supervised Release is a class E felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

    3.    <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

      a.    sentencing is a matter solely within the discretion of the Court;

      b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

      c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

      d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

PLEA AGREEMENT - 5

e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.    Defendant understands that this Plea Agreement contains sentencing recommendations pursuant to Fed. R. Crim. P. 11(c)(1)(C). As a result, Defendant may withdraw from this Plea Agreement if the Court imposes a harsher sentence than agreed upon.

4.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

a.    pleading guilty in this case may have immigration consequences;

b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

PLEA AGREEMENT - 6

a.    the right to a jury trial;

b.    the right to see, hear and question the witnesses;

c.    the right to remain silent at trial;

d.    the right to testify at trial; and

e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    Elements of the Offense

The United States and Defendant agree that, in order to convict Defendant of Timber Afire, in violation of 18 U.S.C. § 1855, the United States would have to prove the following beyond a reasonable doubt:

a.    *First*, on or about May 15, 2023, in the Eastern District of Washington, Defendant did willfully and without authority, set on fire any timber, underbrush, grass or other inflammable material;

b.    *Second*, Defendant did set on fire timber, underbrush, grass or other inflammable material that was on an Indian Reservation or lands belonging to or occupied by any tribe or group of Indians under authority of the United States, or upon any land allotment while the title to the same shall be held in trust by the Government, to wit: land located near Hubbard Lane within the exterior boundaries of the Yakama Nation Indian Reservation.

PLEA AGREEMENT - 7

The United States and Defendant agree that, in order to convict Defendant of Arson of Federal Property, in violation of 18 U.S.C. § 844(f), for Counts 2, 3, 6, and 7, the United States would have to prove the following beyond a reasonable doubt:

    a.    *First,* on or about September 12, 2023 ("the South Slope Fire"), and on or about September 12, 2023 ("the Roza Slope Fire), and on and on or about September 3, 2024 ("the Burbank Creek Fire"), and on or about September 25, 2024 ("the Selah Butte Fire"), in the Eastern District of Washington;

    b.    *Second,* Defendant did knowingly and maliciously damage or destroy, or did attempt to damage or destroy, by means of fire or an explosive, any personal or real property, to wit: wildlands located at Township 17N, Range 19E, Section 30, near State Route 821 Road ("the South Slope Fire"); wildlands located at Township 14N, Range 19E, Section 4, near State Route 821 ("the Roza Slope Fire"); wildlands located adjacent to Burbank Creek Road ("the Burbank Creek Fire"); and wildlands located in an area within the Yakima Canyon and adjacent to Washington State Highway 821 ("the Selah Butte Fire"); and

    c.    *Third,* the aforementioned crimes occurred on property which is in whole or in part owned or possessed by, or leased to, the United States or an institution or any department or agency thereof of any institution or organization receiving Federal financial assistance.

7.    <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

PLEA AGREEMENT - 8

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

*Count 1– Timber Afire.* On or about May 15, 2023, Defendant set a fire at 700 Hubbard Lane, a property of a landlord / former landlord, located within the exterior boundaries of the Yakama Nation Indian Reservation, further located within the Eastern District of Washington. The initial investigation of the alleged fire(s) was conducted by the Federal Bureau of Land Management. Law enforcement reported making contact with a man riding an ATV in the area, who claimed his name was "Zack Manteau." Defendant resided at Victim's property and matched the description of the individual the Forest Manager / Fire Investigator from the Kalispel Tribe reported contacting. Investigator Hartzer reported that Defendant was driving an ATV and was wearing a yellow fire jacket. Hartzer further noted that Defendant claimed he was a firefighter for Ellensburg. Numerous other fires were reported to having been set in that area and most within 10 to 20 feet from ATV tracks. Investigator Hartzer determined that the May 15, 2023 fire was started by arson caused by a "hot set" by a person on an ATV.

*Count 2 & Count 3: the South Slope Fire and Roza Slope Fire.* On September 12, 2023, two separate wildfires were reported on the same day. Bureau of Land Management Investigator Specialist Whitney Machado determined that though related, each fire had a separate origin. Investigator Machado investigated "the South Slope fire," which occurred on federal land within the Eastern District of Washington. The "South Slope Fire" burned 341 acres. Fire crews responded to the scene to contain the wildfire and the aircraft was dispatched to control the fire, which created a substantial risk of injury to public safety officers. Investigator Machado determined that the cause and origin were arson and a flare gun. In September 2024,

PLEA AGREEMENT - 9

Investigator Machado also later located a metal casing from a flare gun in the second origin area of the fire.

Regarding the other fire Defendant set on September 12, 2023, the "Roza Slope Fire," Investigator Machado determined that the cause and origin of the fire, which burned approximately 200 acres, was arson and caused by a flare gun. Fire crews responded to the scene to contain the wildfire, which created a substantial risk of injury to public safety officers. This area is federal land located in the Eastern District of Washington. A witness reported sighting Defendant's white truck above a dam and called 911. The witness described the man with the truck as "scraggly, with a short beard" and "dirty-looking" and being around 40 years old. The witness took a photograph of Defendant's white truck. On October 2, 2024, a White 2002 Chevrolet Silverado, registered to and driven by Defendant, was stopped by law enforcement pursuant to a federal search warrant. The vehicle in both photographs has distinct features and is clearly the same truck that the witness reported seeing near the "South Slope Fire" on September 12, 2023. Defendant set each of these fires utilizing a flare gun.

*Counts 4 and 5– "Roza Fire" and "Yakima River Fire."* On June 14, 2024, two other fires were set on federal land in the Eastern District of Washington, the "Roza Fire" and the "Yakima River Fire." Washington Department of Natural Resources Fire Investigators Court Martin and Lane Berry determined that the origin and cause of the "Roza Fire" was likely human, suspecting a flare gun due to the fire igniting on the opposite side of the river from the roadway. The fire burned 80 acres. Fire crews responded to the scene to contain the wildfire which created a substantial risk of injury to public safety officers. The "Yakima River Fire" was investigated by Investigators Martin and Machado. Both fires were separate from one another. Investigators located a small metal object, believed to be from a flare gun that was collected for evidence. Following locating that object, investigators suspected that the "Yakima River Fire," which burned 0.25 acres, was arson and caused by a flare.

PLEA AGREEMENT - 10

On October 4, 2024, an Orion flare gun was located at Defendant's residence located at 1705 Gordon Road, Apartment 29 in Yakima, within a safe, pursuant to a search warrant issued by a federal magistrate. It was sent to the Washington State Patrol laboratory for comparison. On October 17, 2025, Forensic Scientist Michael F. Murphy compared the cartridge with the Orion flare gun and fired a flare from the Orion (a 12 Gauge caliber flare hull). The report determined that the fired flare canister taken from the area of the "Yakima River Fire," "was inconclusive as having been fired from the Orion flare gun, due to a lack of individual characteristics and damage." Both of these fires occurred on federal land within the Eastern District of Washington. For these reasons, the Government has agreed to dismiss Counts 4 and 5 pursuant to the terms of this Plea Agreement.

*Count 6– "Burbank Creek Fire."* On September 3, 2024, a fire located adjacent to Burbank Creek Road near Yakima Washington, in the Eastern District of Washington. Investigators Cory Brown and Tim White from the Idaho Department of Lands Investigators investigated the fire. The "Burbank Creek Fire" was reported by an eyewitness, who resided on Burbank Creed Road. The eyewitness reported that at approximately 01:00 AM, the fire started on the property across from his/her residence on land belonging to the Department of Natural Resources ("DNR"). The witness observed Defendant's vehicle and "sparks and flames" when looking out her window. The witness advised investigators that he/she had seen a vehicle in the area and heard tires "peeling out" as the vehicle left. Within a few moments of this the witness then saw flames and embers in the area where the vehicle was stopped. After investigation of the scene, this fire was determined to be "incendiary in nature, arson." The eyewitness reported after he/she called 911 to report the fire, he/she left the witness' residence to notify nearby neighbors of the fire. Kittitas Valley Fire & Rescue authored an incident report, noting, "reports are varied and range from sparks to fire threatening structure" and "there is a subsequent report confirming fire threatening address XXX Burbank Creek Road" (the

PLEA AGREEMENT - 11

eyewitness's address).    Fire service personnel responded to fight the fire. Approximately 50 acres were burned.    The "Burbank Creek Fire" created a substantial risk to public safety officers.  The "Burbank Creek Fire's" proximity to residential homes and powerlines (as noted in the fire investigation report) created a substantial risk of injury to any person.

ATF Special Agents K. Standiford and A. Holt later interviewed this witness. The witness described Defendant's vehicle as a having large 4x4 lettering on the driver's side corner and damage to the driver's side of the vehicle.  The witness described the driver as a white male with a "weathered" face, broad shouldered, no facial hair and between 5'4" and 5'10" in height.  (As with the earlier report of Defendant's white truck, this description is consistent with Defendant's 2002 White Chevrolet Silverado).  According to the witness, when he/she asked the driver what he was doing, the driver told said that he was "DNR."  In addition, Kittitas County Fire Rescue Officer Richard Elliot reportedly made contact with Defendant when he saw Defendant driving a truck near the fire on September 3, 2024. Officer Elliott described the vehicle as an early 2000s chevy / GMC pickup with a D and C at the front and end of license plate. This description matches Defendant's vehicle, whose license plate reads D25231C.  Both Officer Elliot and the lay witness later picked Defendant out of a photo array without hesitation. Defendant intentionally set the "Burbank Creek Fire" which burned federal lands.

*Count 7– "Selah Butte Fire."*  On September 25, 2024, a wildfire was located near the Yakima Canyon on BLM land, adjacent to Highway 821.  The Selah Fire Department was dispatched to the area of the fire.  This federal land is further located in the Eastern District of Washington.  The fire occurred in the same general area(s) as the "Roza fire" and "Yakima River Fire" which both took place on June 14, 2024. The fire consumed approximately 200 acres.  Fire crews responded to the scene to contain the wildfire, which created a substantial risk of injury to public safety officers.  An origin and cause investigation was conducted by investigators Jeff

PLEA AGREEMENT - 12

Nichols and Bill Case with the Idaho Department of Lands, and who determined that the fire was highly probably incendiary (arson), believed to have likely been caused with a handheld disposable and/or consumable device such as a lighter or a match. As with several of the other fires, a witness, firefighter Scott Willis advised that he saw a vehicle consistent with Defendant's at the scene, leaving at a high rate of speed, only to return approximately 15 minutes later, "hanging back" and continuing to observe the fire. Defendant's 2002 White Chevrolet Silverado was captured on Flock Cameras in Selah, Washington the following day, September 26, 2024. Defendant intentionally set the "Selah Butte Fire".

    8.    Admissibility of Facts and Prior Statements

By signing this Plea Agreement, Defendant admits the truth of the facts set forth in the Factual Basis section of this Plea Agreement and agrees that these facts, along with any written or oral statements Defendant makes in court, shall be deemed usable and admissible against Defendant in any subsequent legal proceeding, including criminal trials and/or sentencing hearings, under Federal Rule of Evidence 801(d)(2)(A).

Defendant acknowledges, admits, and agrees that by signing this Plea Agreement, Defendant is expressly modifying and waiving Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to any facts Defendant admits and/or any statements Defendant makes in court.

This section does not apply if the Defendant withdraws from the Plea Agreement on the basis if the Court indicates that he is going to a impose a total sentence of 144 months or of the United States withdraws from the Plea Agreement if the Court indicates that he is going to impose a total sentence of less than 84 months of incarceration as set forth in this Plea Agreement, as applied to both cases 1:24-CR-2074-SAB and 1:25-CR-2045-SAB.

//

PLEA AGREEMENT - 13

9.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss the Counts 4 and 5 of Indictment filed on April 9, 2025.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.  The United States expressly excludes from this Plea Agreement any additional charges discovered following the entry of the guilty plea which Defendant has actively been concealing or caused others to conceal.  This Plea Agreement solely addresses Counts 1–7 in 1:25-CR-2045-SAB, and the sole count of 1:24-CR-2075-SAB.

10.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    Base Offense Level

The United States and Defendant have no agreement as to the base offense level.

b.    Special Offense Characteristics:

The United States and Defendant have no agreement as to the any special offenses characteristics.

c.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

PLEA AGREEMENT - 14

  i. accepts this Plea Agreement;

  ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

  iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

  iv. provides complete and accurate information during the sentencing process; and

  v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is convicted of any criminal offense, or if Defendant tests positive for any controlled substance.

  d. <u>Agreements Regarding Representations to the Court</u>

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

  i. The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

PLEA AGREEMENT - 15

ii.    The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

iii.    The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv.    The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v.    The United States and Defendant may each respond to any arguments presented by the other;

vi.    In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii.    In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher

PLEA AGREEMENT - 16

than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

e.    No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

f.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

//

PLEA AGREEMENT - 17

11. <u>Incarceration</u>

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate disposition of Defendant's two pending cases, this case, 1:24-CR-2074-SAB, and 1:25-CR-2045-SAB, is 84 months (7 years) custody to 144 months (12 years) in custody to be served concurrently, to be followed by a term of Supervised Release. The United States and Defendant agree to make those sentencing recommendations to the Court. Although the United States and Defendant agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of greater than 144 months of total confinement or indicates its intent to do so. Defendant also understands that the United States may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of less than 84 months of total confinement or indicates its intent to do so.

The United States and Defendant acknowledge that the imposition of any fine, restitution, or conditions of Supervised Release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition of fines, restitution, or conditions of Supervised Release; and that the Court will exercise its discretion in this regard. The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, or conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

PLEA AGREEMENT - 18

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

12.    Supervised Release

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the term and conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the term or conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any condition of Supervised Release.

//

//

PLEA AGREEMENT - 19

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a. The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b. Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

c. Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

13.   Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14.   Abandonment

Defendant agrees to abandon to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) the following listed assets, including but not limited to:

- an Orion flare gun seized on or about October 4, 2024, pursuant to a search warrant executed at Defendant's residence.

PLEA AGREEMENT - 20

Defendant agrees to take all steps as requested by the United States and ATF to effectuate the abandonment of the assets to ATF and hereby agrees to execute any and all forms and pleadings necessary to effectuate such abandonment.

Defendant consents to the disposal, including destruction of the assets. Defendant agrees to hold all law enforcement agents/officers, and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and abandonment of any asset covered by this agreement.

Defendant waives any right he might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the United States and/or ATF might take, in their sole discretion, to carry out the abandonment, disposition, and destruction of the assets. Defendant=s waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the assets, including any such claim for attorney fees and litigation costs.//

15.    Mandatory Special Penalty Assessment

Defendant agrees to pay the $500 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

16.    Restitution

The United States and Defendant agree that restitution is required. Regarding Count 1, there is no feasible way to determine restitution for the small wildfire set on that date. For the remaining counts in the indictment, the Bureau of Land Management ("BLM") has provided itemized estimates. The Government received itemized restitution amounts on September 9, 2025 and provided them the same day to defense counsel by email. The BLM provided cost summary estimates for Counts 2–7. The total restitution BLM had calculated for Counts 2–7 is $1,010,343.44. These specific amounts per fire / count are as follows:

PLEA AGREEMENT - 21

- Count 2– "South Slope" fire (internal fire code QM6T)– total cost estimate, $578,525.23.
- Count 3– "Roza Slope" fire (internal fire code QM6L)– total cost estimate, $334,850.18.
- Count 4– "Roza" fire (internal fire code R0LY)– total cost estimate, $42,575.02.
- Count 5– "Yakima River" fire (internal fire code R83B)– no cost estimate.
- Count 6– "Burbank Creek" fire (internal fire code R7RC), total cost estimate, $19,164.39.
- Count 7– "Selah Butte" fire (internal fire code R8ZY), total cost estimate $35,228.62.

Defendant agrees that he may be liable and subject to restitution in the amount of no more than $1,010,343.44 upon sentencing.

17.    Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

18.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is convicted of any criminal offense, or tests positive for any controlled substance.

19.    Waiver of Appeal Rights

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any and all aspects of Defendant's conviction and/or the sentence the Court imposes, on any and all grounds, including venue, so long as the Court imposes a term of

PLEA AGREEMENT - 22

incarceration consistent with this Rule 11(c)(1)(C) Plea Agreement. Defendant further expressly agrees that if the Court indicates its intent to impose a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, Defendant has fourteen (14) days from the sentencing hearing to file with the Court a notice of withdrawal from the Rule 11(c)(1)(C) Plea Agreement. Defendant expressly waives Defendant's right to withdraw from the Rule 11(c)(1)(C) Plea Agreement more than fourteen (14) days after the Court either imposes a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement or indicates its intent to do so.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

20.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

PLEA AGREEMENT - 23

c.    the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

21.    Express Waiver of Challenges to Authority

Defendant expressly waives Defendant's right, even if otherwise authorized by the United States Constitution or federal law, to challenge in the district court, to move to withdraw Defendant's plea based on, or to appeal the validity and/or entry of, any and all charging instruments, any and all plea agreements, any and all pleadings, any and all communications between any and all defense counsel and any and all Assistant United States Attorneys, and/or any and all guilty pleas in the above-captioned matter based on any and all arguments that the United States, the United States Attorney's Office for the Eastern District of Washington, the Deputy Attorney General, any and all First Assistant United States Attorneys for the Eastern District of Washington, any and all Criminal Chiefs for the United States Attorney's Office for the Eastern District of Washington, any and all Assistant United States

PLEA AGREEMENT - 24

Attorneys for the Eastern District of Washington, and/or any and all attorneys for the government, are in any way unauthorized to bring, seek, file, and/or resolve any and all aspects of the above-captioned matter, case, and/or charges.

22.    Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Todd Blanche
Deputy Attorney General of the United States

_____    01/13/2026
Letitia A. Sikes                                        Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained

PLEA AGREEMENT - 25

in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____     1/13/26
Zachary Tyler Vantuyl                          Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____     1/13/26
Craig D. Webster                               Date
Attorney for Defendant

PLEA AGREEMENT - 26